[No. 10073. Department Two. May 1, 1912.]

## FLORENCE COOPER, *Respondent*, v. FARMERS & MERCHANTS' BANK OF WENATCHEE, *Appellant*.[1]

PLEADING—ANSWER—INCONSISTENT DEFENSES. In an action by a vendor to recover money paid to a bank by the vendee in a land contract, executed and claimed by the plaintiff, a defense that money which had been paid by the bank to the plaintiff's father for an assignment of the contract had been deposited to the father's credit in the bank and checked out and used by him on improvements to the plaintiff's property, is not inconsistent with other defenses to the effect that the land contract was for the sale of lots in reality belonging to the father, for whom the plaintiff was only a trustee of the title, and that the father was insolvent and indebted to the bank, had sold the contract to the bank, had been fully paid, and that an account had been stated between plaintiff and the bank; and it is immaterial that the conclusions of the pleader were not consistent, it being the province of the court to draw conclusions from the pertinent facts stated.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—EVIDENCE—ADMISSIBILITY. In an action by a vendor against a bank for money paid by the vendee in a land contract, executed and claimed by the plaintiff, in which the bank made the defense that the lots in reality belonged to the father of the plaintiff, for whom she was only a trus-

[1]Reported in 123 Pac. 465.

tee of the title, and that the father, who was insolvent and indebted to the bank, had sold the contract to the bank, which was the true owner thereof, it is error to exclude evidence tending to show the relations between the plaintiff and her father with respect to the lots and contract, that he had represented her in other like matters about the same time, that she had placed the contract in his hands, that he was insolvent, and had sold the contract to the bank for its face value, that he had used the proceeds in the improvement of property belonging to the daughter, and that she had appropriated the property to her own use; as the evidence tends to show that the father had authority to represent the plaintiff in making the sale to the bank, and that by reason of his insolvency, the bank would have no other means of recovering the loss if his acts were unauthorized, and in equity could inquire into the dealings between father and daughter.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered June 1, 1911, upon findings in favor of the plaintiff, in an action for money paid, after a trial to the court. Reversed.

*Ludington & Kemp*, for appellant.
*Reeves & Reeves*, for respondent.

FULLERTON, J.—In July 1903, one J. M. Tompkins, the father of the respondent, Florence Cooper, purchased two certain lots, situated in the town of Wenatchee, causing the same to be deeded to the respondent. In the early part of the year 1906, the lots were placed in the hands of Arthur Gunn, a real estate broker, for the purposes of sale. Gunn procured a purchaser for the lots in the person of one Crollard, who agreed to pay therefor the sum of $200 in cash on the execution of a written contract of sale of the lots, and the sum of $800 in monthly installments of $15 each, with interest on the deferred payments at eight per centum per annum. On March 3, 1906, Gunn brought to Crollard a contract executed by the respondent in duplicate, containing the terms theretofore agreed upon, whereupon Crollard executed the same, keeping one in his own possession and leaving the other with Gunn. He thereupon paid Gunn the

sum of $200, and was told by Gunn to make the installment payments as they became due at the appellant bank, of which J. M. Tompkins was then president.

On May 1, 1906, Crollard paid to J. M. Tompkins at the bank, on account of the contract, the sum of $17.40 being the first deferred payment with accrued interest. Subsequent to that time, and up to and including September 1908, he made monthly payments of $15 each, to the appellant bank on the contract. After making the September, 1908, payment, he offered to pay the balance in a lump sum, and requested a deed. The appellant, which then claimed to own the contract, thereupon sought to have the respondent make the deed. This she refused to do, unless the consideration therefor was paid over to her. Crollard then took up negotiations with the respondent personally, and procured a deed from her by paying to her the balance due under the contract. This action was thereupon instituted by the respondent to recover the sum paid on the contract into the bank. The complaint set forth the fact of payment, and alleged that the money was paid for her use.

The appellant, for answer to the complaint, after making certain denials, set up ownership in itself of the contract. It alleged that the lots in question were the property of J. M. Tompkins, that Tompkins purchased the same with his own funds and had the same conveyed to his daughter as his trustee, and that she contracted to sell the same to Crollard as such trustee; that Tompkins was then, and at all times since, insolvent; that Tompkins sold the contract to the appellant and received in cash the face value thereof; that no assignment thereof was taken because of the neglect of Tompkins; that Tompkins died on November 26, 1906; that an administration was had upon his estate, in which notice to creditors was given; that no claim was made by the respondent against the bank for the contract until long after the time for presenting claims against such estate had ex-

pired, and by reason thereof and the insolvency of Tompkins, the appellant cannot recoup against his estate.

For a second defense it alleged that, on January 25, 1907, an account was stated between the respondent and the appellant, in which it was agreed that the balance due from the appellant to the respondent was $67.40, which sum was duly paid by the appellant.

There was also a cross-complaint in which the appellant sought to recover from the respondent the amount paid by Crollárd to her as the balance due upon the contract. At the opening of the trial, which was being had by the court sitting without a jury, the appellant asked leave to set up a further defense to the effect that the money which the bank had paid to the father of the respondent for the contract of sale had been first deposited to the father's credit in the appellant bank, and subsequently checked out by him in payment for materials used in the construction of a dwelling house then being constructed on property the title to which stood in the name of the respondent, and which was afterwards claimed by her as her separate property, not subject to administration as part of her father's estate. The requested amendment was denied by the court on the ground that it was inconsistent with the other defenses pleaded.

At the trial, the respondent did not offer herself as a witness, but sought to prove her case by introducing her title deeds, the contract with Crollard, and the fact that Crollard had paid into the appellant bank on the contract the money demanded in her complaint.

The appellant introduced evidence tending to prove that, at the time the property in question was deeded to the respondent, she was without means and depended upon her father for her support, and that the father and not the daughter paid the consideration for which the deeds were executed. It thereupon offered to prove that the father was then insolvent, and continued to be insolvent up to the time of his death, which occurred November 26, 1906. This evi-

dence the trial court rejected.    The appellant then intro-
duced evidence tending to prove that J. M. Tompkins was a
stockholder in the appellant bank, and its president from the
time of its organization up to the time of his death; that on
May 1, 1906, he had the contract in question in his posses-
sion at the bank, and received the first payment made thereon
by Crollard; that on the 26th of the same month, he cred-
ited thereon the payment so made, and placed the contract
among the assets of the bank as the property of the bank,
and credited his private account in the sum of $782.60,
being the face value of the contract less the payment made
thereon by Crollard on May 1, 1906.    It also introduced
evidence tending to show that Tompkins checked out the sum
so credited to him, and offered to show that the money so
checked out was used in the construction of a house upon
certain lots in the town of Cashmere, the title to which then
and now stands in the name of the respondent, and that the
property had not been administered upon as property be-
longing to the estate of J. M. Tompkins.    This offered proof
was rejected, whereupon the appellant again requested to be
allowed to amend its answer in that regard and submit such
proofs under its amended answer.    This request was like-
wise refused.    It also offered evidence to prove that the es-
tate of J. M. Tompkins was insolvent and would not pay the
claims presented against it in full, which offer was also re-
fused.    It then offered to show that certain land in Mission
and Cashmere had been conveyed to respondent in 1906,
the deeds to which were recorded at the request of J. M.
Tompkins; and also offered to show the date on which the
notice to creditors was given in the Tompkins' estate.    These
offers of proof were also rejected.    At the conclusion of the
case, the court rendered judgment in favor of the respond-
ent, and the bank brings the case into this court.

The appellant assigns error on the rulings of the court
denying him the right to amend his answer and rejecting
his proffered evidence.    It seems to us that the assignments

in the main are well taken.    The facts sought to be shown
under the proposed amendment were not inconsistent with
the facts shown under the other defenses pleaded.    The con-
clusion the pleader sought to draw from the facts set forth
in the different defenses may have been inconsistent, but it is
the province of the trier of the facts to draw conclusions
from the facts rather than that of the pleader, and facts
pertinent to the issue should not be rejected merely because
inconsistent conclusions may be drawn therefrom.

That the facts here offered to be proven were pertinent
to the issue seems unquestionable.    If it be true that the
daughter placed this contract in the hands of her father,
that he sold it to the appellant bank for its full face value,
that he applied the proceeds of the sale in payment for ma-
terial used in the construction of a house erected on prop-
erty belonging to the daughter, and that the daughter has
appropriated the property to her own use, it tends strongly
to show that the father had authority to represent the
daughter in making the sale to the bank; strong enough,
indeed, to overcome the presumption otherwise, arising from
the mere fact that no writing is produced from the daughter
tending to show such authority.

The fact that the father filed deeds for record of property
conveyed to the daughter shows that he transacted business
for her, and tends to show that he had authority to transact
business for her.    Of course, a single transaction does not
of itself prove much, but the inference of authority arising
from acts becomes stronger as the acts are multiplied, and
it is on this principle that evidence of the character here re-
jected is admissible.

The evidence showing the insolvency of Tompkins and the
insolvency of his estate was also admissible.    It was admis-
sible for the purpose of showing that the bank had no means
of recovering the loss caused by the act of its president, if
his acts were unauthorized; thus showing its right in equity

to inquire into the real purport of the dealings between the father and the daughter.

The error of the court in excluding evidence pertinent to the issues requires us to remand the case for a new trial. The order will go accordingly.

DUNBAR, C. J., ELLIS, MOUNT, and MORRIS, JJ., concur.